ORIGINAL

REISSUED FOR PUBLICATION
SEP 20 2018
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 15-1474V
(to be published)

```
*************************
JANET CAKIR as Parent and Guardian   *
of C.A.C., a minor,                   *
                                      *
            Petitioner,               *
                                      *
    v.                                *
                                      *
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *
                                      *
            Respondent.               *
                                      *
*************************
```

FILED
JUL 12 2018
U.S. COURT OF FEDERAL CLAIMS

Special Master Corcoran

Filed: July 12, 2018

Dismissal; Diptheria-tetanus-acellular pertussis ("DTap") Vaccine; Autism Spectrum Disorder ("ASD"); Statue of Limitations; Equitable Tolling.

*Janet Cakir, pro se*, Chapel Hill, NC, for Petitioner.

*Lisa Ann Watts*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION DISMISSING CASE[1]

On December 7, 2015, Janet Cakir (on behalf of her son, C.A.C.) filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] In it, Ms. Cakir alleged that the Diphtheria-tetanus-acellular pertussis ("DTap") vaccine C.A.C. received on October 1, 2012, caused him to suffer an encephalopathy manifesting with symptoms of attention deficit and hyperactivity disorder ("ADHD"). Petition at

---

[1] This Decision will be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

FedEx 837583792135

1. The Petition also alleges that the vaccine worsened C.A.C.'s pre-existing autism spectrum disorder ("ASD"). *Id.* at 2.

Having completed my review of the evidentiary record and the parties' filings, I hereby **DISMISS** this case as untimely, and for insufficient proof as well. As discussed in greater detail below, Petitioner's claim was filed outside the statute of limitations period set forth in the Vaccine Act, and her arguments offered in support of tolling that period are not persuasive. The record also does not support Petitioner's contention that C.A.C. suffered from an encephalopathy or any other reaction to the relevant vaccines. The claim otherwise recycles causal theories involving autism as an injury that have been universally rejected in the Vaccine Program.

**Factual and Procedural History**

This case was originally before Special Master Hastings, and then transferred to me on October 4, 2017 (ECF No. 61). As alleged in the Petition, C.A.C. received his fifth dose of the DTap vaccine on October 1, 2012. Pet. at 1; Ex. 1 at 3. Two years before, C.A.C. had been diagnosed with autism spectrum disorder in July 2010 (Ex. 19 at 241; Ex. 3 at 1-10). Pre-vaccination records also indicate a concern for possible ADHD in April 2012 (Ex. 2 at 122). He was subsequently treated and monitored for these conditions. The medical records filed in this case reveal no evidence that would establish any concerning medical reaction to C.A.C.'s receipt of the DTap vaccine in the months post-vaccination.

C.A.C. presented to Dr. Emily Wray on January 10, 2013 (over two months post-vaccination), for cognitive function treatment related to his pre-vaccination autism diagnosis. Ex. 3 at 11. During this visit, Dr. Wray stated that C.A.C.'s evaluation also indicated the presence of ADHD. *Id.* at 18. C.A.C. also presented to Dr. Andrew Frye in May 2013, who opined that C.A.C. was suffering from a developmental encephalopathy with characteristics of ASD without a clear etiology. Ex. 4 at 84-85. As a result of this visit, C.A.C. entered a 12-week treatment trial of folinic acid which purportedly resulted in great improvement. Ex. 11 at 1. Over the course of the next three years, C.A.C. was treated by several physicians for ASD and ADHD. *See generally* Ex. 4, 5, 9, 16, 19, 20.

After filing her *pro se* Petition on December 7, 2015, Petitioner subsequently obtained counsel and began filing medical records from late April 2016 to August 2016. Thereafter, the parties filed the Joint Statement of Completion on August 23, 2016 (ECF No. 29). Respondent filed her Rule 4(c) Report on November 7, 2016, concluding that compensation was not appropriate in this case (ECF No. 32).

After a status conference held in November 2016 to inform Petitioner of his views regarding deficiencies in Petitioner's claim, Special Master Hastings issued an Order directing

her to file a status report indicating how she would like to proceed with her case. ECF No. 33. Instead, on March 2, 2017, Petitioner filed an expert report in support of her claim from Dr. Karen Harum (one of C.A.C.'s treaters), detailing her treatment of C.A.C. and his alleged post-vaccine developmental regression. *See* Expert Report of Dr. Karen Harum, dated Mar. 2, 2017, filed as Ex. 21 (ECF No. 37) ("Harum Rep."). Dr. Harum's expert report opined that C.A.C. began to regress twelve days post-vaccination, evidenced by symptoms including hypotonia, lost focus, and over-focused observation. *Id.* at 8. She further expressed the view that C.A.C. showed a progressive pattern of regression as a result of the DTap vaccine (allegedly resulting in an encephalopathy followed by developmental problems), and that multiple factors played a role in his adverse reaction (including chronic antibiotic use, disrupted intestinal microbiome, concurrent sinusitis, an unidentified mitochondrial dysfunction, and a family history of auto-immune disorders). *Id.*[3] Although Dr. Harum's report included citations to medical literature, she did not file any literature in support of her opinion.

Dr. Harum's opinion thus introduced a significant procedural difficulty for the prosecution of Ms. Cakir's claim. Because she opined that onset of C.A.C.'s developmental problems began some time in mid-October 2012, the claim would be untimely - as it was not filed until December 7, 2015, *more* than three years from purported onset, and thus not in compliance with the Act's 36-month limitations period. *See* Section 16(a)(2).

Thereafter a status conference was held on March 6, 2017, during which Petitioner's counsel informed Special Master Hastings that he intended to file a motion to withdraw, doing so on March 23, 2017 (ECF No. 40). Following counsel's withdrawal, Special Master Hastings ordered Petitioner (now *pro se* for the second time) to file a status report (originally ordered in November 2016) indicating how she intended to proceed in the case. ECF No. 47. In response, Petitioner filed a report on May 30, 2017, which included multiple motions (two unrelated to the present case),[4] plus requests for subpoenas. *See* Status Report, dated May 30, 2017 (ECF No. 49). Petitioner also included a motion requesting a finding of equitable tolling in light of her potentially-untimely Petition. *Id.* On August 25, 2017, Special Master Hastings denied Petitioner's motion as moot, noting that in his view there was no reason to determine at that time if equitable tolling applied because he had not determined if the Petition was untimely in the first

---

[3] In her report, Dr. Harum embraced a theory based on molecular mimicry. According to Dr. Harum, the pertussis toxin increases predisposition to autoimmune diseases by inhibiting the normal function of tolerance mechanisms in the lymphoid tissue (for example, increased cytokine production causing a breakdown of the blood vessels in the blood brain barrier). *Id.* She opined that the fimbriae component of the pertussis vaccine "can serve as a molecular mimic in autoimmunity." *Id.* Thus, a cross reaction between a component in the DTap vaccine (the fimbriae) and a CNS protein (for example, the myelin oligodendrocyte glycoprotein) caused C.A.C. to experience an attack on the neuronal tissue in his brain, and subsequently develop an autoimmune encephalopathy. *Id.*

[4] Petitioner's status report included motions to reopen, toll, and add a vaccine (DTap) to a previous case filed with the Omnibus Autism Proceedings (No. 14-1383V). ECF No. 49.

place. *See* Ruling Denying Equitable Tolling Motion, filed on Aug. 25, 2017 (ECF No. 59) at 2. Special Master Hastings also denied Petitioner's FOIA requests (ECF No. 58).

After the case was transferred to me, on October 31, 2017, I issued an Order directing Petitioner to immediately file a status report (originally ordered by Special Master Hastings on August 25, 2017 (ECF No. 59)) addressing the deficiencies in her claim, including her difficulties in showing that the Petition was timely filed. I specifically ordered Petitioner to state in that report when, in her view, C.A.C. first suffered symptoms following his October 2012 vaccination. *Id.* at 1. Petitioner missed the deadline to act. Thereafter, on November 15, 2017, I issued an Order directing Petitioner to show cause why her case should not be dismissed. *See* Order to Show Cause, dated Nov. 15, 2017 (ECF No. 63).

Ms. Cakir filed a status report on November 27, 2017, attempting to address my concerns. *See* Status Report, filed Nov. 15, 2017 (ECF No. 64) ("Response"). In it, Petitioner maintained that C.A.C. had suffered an encephalopathy following receipt of the DTap vaccine, and stated that his symptoms began one day post-vaccination, or on October 2, 2012. Response at 2. To justify the untimely filing, Petitioner alleged that her son's pediatrician had committed a clerical error (or "intentional fraud," as described by Petitioner), in failing to correctly note the actual date of C.A.C.'s October 2012 vaccination in his medical records. *Id.* Of note, however, C.A.C.'s North Carolina state immunization record indicates that he did in fact receive a 5th dose of the DTap vaccine on October 1, 2012. *See* Immunization Record, filed on Apr. 21, 2016 (ECF No. 13-1) at 3. Furthermore, Petitioner alleged that the Vaccine Injury Compensation Program, through HHS, "committed fraud against [C.A.C.] by creating fake 'cases' for [C.A.C.] in the Program." Response at 1. Petitioner states that these unidentified "fake cases" led her to believe she had exercised due diligence in filing a claim on her son's behalf. *Id.*[5]

Upon review of Petitioner's Response, I issued a second Show Cause Order on March 20, 2018, directing Petitioner to set forth her tolling argument in greater detail. *See* Order, dated Mar. 20, 2018 (ECF No. 65). Specifically, I directed Petitioner to address how fraud (alleged in her first response) had prevented her from filing her claim in a timely manner. *Id.* at 2.

Petitioner filed a response to my second Show Cause Order on April 27, 2018, and attempted to explain in more detail some of her prior assertions (in particular, her "fake cases" allegation). *See* Response, filed on Apr. 27, 2018 (ECF No. 66) ("Second Response").[6]

---

[5] Petitioner also requested that I grant FOIA subpoenas against HHS (relief previously denied by Special Master Hastings due to lack of jurisdiction). Response at 2; *see also* ECF No. 58. Petitioner asserts that she is attempting to obtain records held by HHS (or Respondent) related to the purported fraud committed against her son. *Id.*

[6] Petitioner later submitted yet another response to my March 2018 show cause Order (dated May 4, 2018). *See* ECF No. 68. However, this document is the same as the one filed on April 27, 2018.

According to Petitioner, "sometime in 2011 or 2012," she contacted the Health Resources & Services Administration ("HRSA") helpline to request information about filing a vaccine injury claim. Second Response at 5. A representative purportedly informed her that HRSA had "created a case" for her son and asked her to "call back at a later date" (presumably to check the status). *Id.* Petitioner claims she called the helpline back and a different representative reported they had no record of any "case" opened for her son. *Id.* Petitioner asserts that she contacted the helpline a second time in 2014 and requested assistance with filing a claim (this time pertaining to a significant aggravation of C.A.C's pre-existing condition). *Id.* at 7. She claims that during this second attempt, representatives from HRSA informed her "that she could not file a claim for her son because the symptoms and timing did not qualify him for compensation . . . ." *Id.*[7] In summary, Petitioner claims equitable tolling should apply in the instance matter because representatives at HRSA "misrepresented the process" for filing a vaccine injury Petition, and otherwise "dissuaded [her] from filing" a claim. *Id.* at 8-9, 14-15. She further asserts that she uncovered these "fake cases" in 2017, prior to which time to she was under the impression she had filed a timely claim with the Court of Federal Claims. *Id.* at 15-16.

In additional support of her equitable tolling argument, Petitioner claims that two of C.A.C.'s pediatricians "fraudulently concealed evidence of her son's DTap vaccinations . . .[,]" which she claims constitutes "a misrepresentation of the facts that are the core of a vaccine petition." Second Response at 17-19. Although she claims C.A.C.'s treaters failed to record the proper vaccination date in 2012, she acknowledges that later-obtained records (in 2015) correctly note the proper vaccination date. *Id.* at 18-19. In any event, Petitioner asserts that such a "mistake by an opponent" is grounds for tolling of the limitations period. *Id.* at 19.

Respondent filed a brief in reaction (along with a dismissal motion) to the Show Cause Order on May 11, 2018. *See* Motion to Dismiss, filed on May 11, 2018 (ECF No. 69) ("Mot."). In it, Respondent reiterates his view that the present case is time-barred and should be dismissed despite Petitioner's tolling argument, given Petitioner's "unsubstantiated allegations" of misrepresentation by HRSA personnel. Mot. at 4, 6. Respondent further expresses confusion with regard to Ms. Cakir's claims relating to the falsified vaccination record, asserting that "it is unclear how the failure to record the correct vaccination date affected Petitioner's ability to timely file a petition." *Id.* at 6.

---

[7] In addition to the above allegations, Petitioner also claims that HRSA personnel altered their contact information in 2015 to prevent her from calling to request the status of her case. Second Response at 10-11, 16.

## ANALYSIS

### I. Petitioner's Claim is Untimely

As noted, the statute of limitations prescribed by the Vaccine Act is three years (thirty-six months), measured "after the expiration of 36 months after the date of the occurrence of the first symptom of manifesting of onset or of the significant aggravation of such injury." Section 16(a)(2). The statute of limitations thus begins to run from the manifestation of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis. *Carson v. Sec'y of Health & Human Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013). Special masters have appropriately dismissed cases that were filed outside the limitations period, even by a single day or two. *See, e.g., Spohn v. Sec'y of Health & Human Servs.*, No. 95-0460V, 1996 WL 532610 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) (dismissing case filed one day beyond the thirty-six-month limitations period), *aff'd*, 132 F.3d 52 (Fed. Cir. 1997).

As the record reveals, Petitioner alleges that C.A.C. first experienced adverse symptoms on October 2, 2012, one day post-vaccination. Response at 2. Thus, the statute of limitations expired on October 2, 2015. Dr. Harum placed onset somewhat later, or twelve days post-vaccination. *See* Harum Rep. at 8. Assuming either onset date, the matter is time-barred, as the case was filed on December 7, 2015, just over two months past the limitations period. *See* Pet. at 1.

The Federal Circuit has held that the doctrine of equitable tolling can apply to Vaccine Act claims in limited circumstances. *See Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1340-41 (Fed. Cir. 2011). These limited circumstances have been enumerated to include fraud and duress. *Cloer*, 654 F.3d at 1344-45 (citing *Bailey v. Glover*, 88 U.S. 342, 349-350) (1874) ("[t]o hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the *party committing the fraud* could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure.") (emphasis added)). However, the Federal Circuit has specifically stated that "equitable tolling under the Vaccine Act due to unawareness of a causal link between an injury and administration of a vaccine is unavailable" as a tolling mechanism. *Id.* at 1345.

In the present matter, Petitioner does allege some fraudulent activity relating to HRSA and the creation of "fake cases" involving her son that purportedly misled her from filing this Petition. *See* Second Response at 5, 8-9, 14-15. Thus, Petitioner claims that HRSA personnel misrepresented the process of filing a vaccine petition with the Court of Federal Claims, thereby causing her to believe that her initial contact with HRSA (via the helpline) constituted a filed

claim (when, presumably, she was actually given a case number applicable only to her helpline call). *See id.* She further claims that she was dissuaded from filing a significant aggravation claim in 2014 for similar reasons (although in her second attempt she claims that HRSA personnel informed her that C.A.C.'s "symptoms and timing did not qualify him for compensation"). *See id.* at 7.

These circumstances—which are loosely alleged at best—do not encompass the type of fraudulent activity contemplated by the Court in *Cloer*. *See, e.g.*, *Krenik v. Sec'y of Health & Human Servs.*, No. 03-2755V, 2014 WL 4387219, at *9-10 (Fed. Cl. Spec. Mstr. July 25, 2014) (denying equitable tolling where petitioner alleged fraudulent activity by a government agency, due in part to the existence of other sources of information available to petitioner that could have been accessed during a diligent search); *Maack v. Sec'y of Health & Human Servs.*, No. 12-354V, 2013 WL 4718924, at *5 (Fed. Cl. Spec. Mstr. Aug. 6, 2013) ("A petitioner's lack of knowledge of the law does not constitute extraordinary circumstances permitting equitable tolling of the statute of limitations."); *see also Spohn v. Sec'y of Health & Human Servs.*, No. 95-460V, 1996 WL 532610, at *4 n.8 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) ("[e]quitable estoppel involves the situation in which the defendant actively and *intentionally* misleads or counsels an injured person not to sue or investigate a claim") (quoting *Goodhand v. United States*, 40 F.3d 209, 213-14 (7th Cir. 1994)) (emphasis added), *mot. for review den'd*, (Fed. Cl. Jan. 10, 1997), *aff'd*, 132 F.3d 52 (Fed. Cir. 1997). A claimant cannot rely on even mistaken advice provided her by a clerk or court official in explaining why a matter was filed in an untimely manner. *See, e.g.*, *Price v. Sec'y of Health & Human Servs.*, 565 F. App'x 891, 894-95 (Fed. Cir. 2014) (alleged misinformation from a court clerk did not excuse the untimely filing of a motion for review).

Moreover, the evidence offered in connection with Petitioner's fraud allegations does not corroborate her assertion that an HRSA employee *intended* to misrepresent the filing process or dissuade her from filing an injury claim. *See, e.g.*, Exs. 60-66 (self-recorded and self-transcribed by Petitioner purported "confession" of HRSA employee), Ex. 59, 71-72 (emails relating to a change in the HRSA contact information); Exs. 75-76 (voice recording of Petitioner requesting a case status update, presumably from HRSA). Rather, the majority of evidence offered appears to illustrate *Petitioner's* attempt to locate the original call center representative who relayed the alleged misinformation, as well as her attempt to obtain evidence that HRSA altered its helpline contact information to intentionally prevent Petitioner from gaining information. The materials submitted do not evidence any fraudulent activity on the part of HRSA.

Petitioner also alleges that C.A.C.'s pediatrician committed fraud in failing to record the date of her son's fifth DTap vaccination (although it does appear on state immunization records). However, Petitioner does not allege that such fraud inhibited her ability to meet the limitations requirement. Rather, Petitioner requests equitable tolling simply because the falsified record constitutes "a mistake" or "misrepresentation of the facts[,]" without explaining why this mistake

or fraud prevented *her* from timely filing the claim. *See* Second Response at 19-20. While fraud may be an acceptable circumstance warranting equitable tolling, the facts of this case do not suggest the alleged fraud committed by treaters related to *Petitioner's* ability to file the case in a timely manner, which precedent requires. *See G.L.G. v. Sec'y of Health & Human Servs.*, No. 09-008V, 2013 WL 6503642, at *7 (Fed. Cl. Spec. Mstr. Oct. 28, 2013) ("[t]o justify the application of equitable tolling, [a petitioner] must show she experienced some type of fraud or duress *which prevented her from filing her petition* before the expiration of the statue of limitations.") (emphasis added)), *mot. for review den'd*, 2013 WL 6503642 (Fed. Cl. Oct. 28. 2013), *aff'd*, 577 F. App'x 876 (Fed. Cir. Aug. 7, 2014).

Ultimately, none of the relevant circumstances that would permit tolling have been shown by Petitioner to apply herein. Thus, the equitable tolling doctrine does not apply, and I must therefore dismiss the present matter as untimely.

**II. Petitioner's Claim Lacks Sufficient Proof**

Even if Ms. Cakir's claim had been timely filed, it is highly unlikely that it would succeed, given the nature of her allegations and their similarity to numerous other Program cases that have unsuccessfully mounted similar causation theories. Accordingly, were I not dismissing the claim for its untimeliness, I would have issued an order to show cause why the claim should not be dismissed on its merits given its apparent lack of reasonable basis—and, nothing from the present record could be invoked to save the claim.

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that she suffered a "Table Injury" – i.e., an injury falling within the Vaccine Injury Table – corresponding to one of her vaccinations, or (2) that she suffered an injury that was actually caused by a vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1).[8] An examination of the record, however, does not uncover any persuasive evidence (or medical record support) that C.A.C suffered a "Table Injury." Further, the record does not contain persuasive evidence indicating that the alleged injuries that C.A.C. experienced could have been caused or significantly aggravated by the vaccine that he received on October 1, 2012.

Under the Vaccine Act, a petitioner may not receive a Vaccine Program award based solely on her claims alone. Rather, the petition must be supported by either medical records or by the opinion of a competent physician. Section 13(a)(1). In this case, there is insufficient evidence in the record for Petitioner to meet her burden of proof.

---

[8] An encephalopathy may be a Table injury following receipt of the DTap vaccine if a petitioner can establish the existence of an acute encephalopathy within 72 hours of vaccination. *See* 42 C.F.R. § 100.3(II)(B). However, Petitioner's medical records do not support a claim meeting this criteria.

The medical record reveals that C.A.C. was diagnosed with ASD in earlier 2010, roughly two years prior to receiving the DTap vaccine in October 2012. Ex. 19 at 241. In addition, concerns for a possible ADHD diagnosis were noted by treaters in April 2012, also prior to C.A.C.'s receipt of the DTap vaccination. Ex. 2 at 122. There is no persuasive evidence in the record that the DTap vaccine caused a significant aggravation of C.A.C.'s pre-existing ASD diagnosis or caused C.A.C to develop ADHD. While it is true that vaccinations are noted in C.A.C.'s overall health course, it does not appear that any treaters (apart from Dr. Harum) ever attributed his symptoms to any vaccination he received. *See, e.g.*, Ex. 3 at 2, 13-21; Ex. 4 at 83-85; Ex. 5 at 4 (concluding C.A.C. had developmental encephalopathy with characteristics of ASD, without clear etiology); Ex. 9 at 2 (noting mother related developmental regression to vaccine); Ex. 20 at 18 (same). The record otherwise does not suggest that C.A.C. experienced any reaction to his fifth dose of DTap vaccine that might corroborate allegations that he was experiencing an encephalopathy post-vaccination. Petitioner's claim therefore cannot succeed and must be dismissed. *See* Section 11(c)(1)(A).

The nature of Ms. Cakir's claim also bears on its viability. It is well settled in the Vaccine Program that claims alleging that vaccines can cause—or aggravate—autism or autism-like symptoms have generally not been met with success as reflected in the Omnibus Autism Proceedings ("OAP") and subsequent decisions.[9] Petitioner's expert report submitted by Dr. Harum is similarly unpersuasive, as it makes arguments much like those rejected in the OAP.

---

[9] These theories were first advanced in proceedings related where thousands of petitioners' claims that certain vaccines caused autism were joined for purposes of efficient resolution. A "Petitioners' Steering Committee" was formed by many attorneys who represent Vaccine Program petitioners, with about 180 attorneys participating. This group chose "test" cases to represent the entire docket, with the understanding that the outcomes in these cases would be applied to cases with similar facts alleging similar theories.

The Petitioners' Steering Committee chose six test cases to present two different theories regarding autism causation. The first theory alleged that the measles portion of the MMR vaccine precipitated autism, or, in the alternative, that MMR plus thimerosal-containing vaccines caused autism, while the second theory alleged that the mercury contained in thimerosal-containing vaccines could affect an infant's brain, leading to autism

The first theory was rejected in three test case decisions, all of which were subsequently affirmed. See generally Cedillo v. Sec'y of Health & Human Servs., No. 98–916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), mot. for review den'd, 89 Fed.Cl. 158 (2009), aff'd, 617 F.3d 1328 (Fed. Cir. 2010); Hazlehurst v. Sec'y of Health & Human Servs., No. 03–654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), mot. for review den'd, 88 Fed.Cl. 473 (2009), aff'd, 604 F.3d 1343 (Fed. Cir. 2010); Snyder v. Sec'y of Health & Human Servs., No. 01–162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), aff'd, 88 Fed.Cl. 706 (2009).

The second theory was similarly rejected. Dwyer v. Sec'y of Health & Human Servs., No. 03–1202V, 2010 WL 892250 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); King v. Sec'y of Health & Human Servs., No. 03–584V, 2010 WL 892296 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); Mead v. Sec'y of Health & Human Servs., No. 03–215V, 2010 WL 892248 (Fed. Cl. Spec. Mstr. Mar. 12, 2010).

Ultimately a total of 11 lengthy decisions by special masters, the judges of the U.S. Court of Federal Claims, and the panels of the U.S. Court of Appeals for the Federal Circuit, unanimously rejected the petitioners' claims. These decisions found no persuasive evidence that the MMR vaccine or thimerosal-containing vaccines caused autism. The OAP proceedings concluded in 2010.

Thus, this case is dismissed as untimely and for insufficient proof. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

Brian H. Corcoran
Special Master